Hearing Date:  May 1, 2014 at 10:00 am
Re: ECF No. 4, 18, 20, 23

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>MARCIA CAMPBELL,<br><br>        *Debtor*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Chapter 13<br><br>Case No. 13-40003 (ALG) |

**FIRST SUPPLEMENTAL OBJECTION OF**
**3939 WPR FUNDING LLC TO DEBTORS' CHAPTER 13 PLAN**

3939 WPR Funding LLC ("<u>WPR Funding</u>"), by and through its counsel, hereby objects and replies to the above-captioned debtors' (the "<u>Debtors</u>") opposition (the "<u>Debtor's Reply</u>") [Docket No. 20] to WPR Funding's objection [Docket Nos. 16, 18] to the proposed chapter 13 plan, which plan was amended on April 24, 2014, seven days before the scheduled confirmation hearing (as amended, the "<u>Plan</u>").  In support hereof, WPR Funding incorporates by reference as if fully set forth herein WPR Funding's original objection [Docket Nos. 16, 18] filed with this Court on April 18, 2014 in response to the Debtor's first chapter 13 plan, and respectfully states as follows:

**OBJECTION**

1.      The Debtor's Reply is notable for what it does and does not say regarding the WPR's original objection and the Plan.  The Reply is insufficient to overcome WPR Funding's and other objections to confirmation under either the original plan or under the amended Plan and ought to be rejected.

2.      As an initial matter, the hearing on confirmation should not proceed on May 1, 2014.  The Debtor amended the Plan just under seven days before confirmation.  Under

Bankruptcy Rule 2002(b)(2), the time for filing objections to a chapter 13 plan is 28 days.  This

is particularly relevant here where the Debtor intends to object to WPR Funding's claim and void

a lien on another creditor.  This is an attempt to unfairly shorten the parties' response time in this

case.  This case has been pending for almost five months and the Debtor had that long to amend

the Plan.  Just a week or so before confirmation, the Debtor takes the position that it is going

object to certain claims and liens, which will have a material effect on the Plan economics.  As of

the date hereof, the Debtor has still not objected to WPR's claim even though that claim has been

on file with this Court since the beginning of February, almost three months ago.  Confirmation

was scheduled in December 2013.  The consequences of the Debtor's threatened objections

affect the parties' rights in connection with confirmation.  Further, as noted in WPR's original

objection, the Debtor's postpetition payments have been erratic and have not been the same

twice.  Therefore, the additional time will give all parties a further opportunity to see the

Debtor's postpetition track record.  Accordingly, the Court should not permit the Debtor to

proceed with confirmation on May 1, 2014.  Proceeding will simply require all parties to incur

unnecessary expense in connection with an unconfirmable plan served with inadequate notice.

       3.       The Debtor wrongly complains that WPR's claim purportedly "lists excessive

attorneys fees that are not itemized with specificity."  (Debtor's Reply, ¶ 4.)  Rule 3001(c)(2)(A)

provides:

> If, in addition to its principal amount, a claim includes interest, fees, expenses, or other
> charges incurred before the petition was filed, an itemized statement of the interest, fees,
> expenses, or charges shall be filed with the proof of claim.

The Rule requires that the claim be accompanied with an itemized list of the claim components,

which is exactly what WPR Funding did.  (*See* Claim No. 7, Exhibit F.)  Those prepetition legal

fees, which total less than $12,000 were for 18 months of legal work during the 18 months time

when the Debtor enjoyed the use and occupancy of and collected rents on the Property but failed

to pay the lender or the carrying costs of the Property.  Accordingly, the prepetition legal fees are

very modest.[1]  Nowhere in the Rule does it require that the legal fees be listed with specificity.  It

is not even clear what the Debtor means "to list them with specificity."

4.    Next, the Debtor complains of the prepayment charge permitted by the note and

mortgage.  This was properly included in the proof of claim at the time of filing and must stay

until WPR understands the Debtor's intentions under a confirmable plan.  If the Debtor chooses

to payoff the note and mortgage under a plan, the prepayment will apply.  If no prepayment is

contemplated under a confirmable plan, WPR would not be entitled to the prepayment amount

and, therefore, would strike that fee from its proof of claim.

5.    The Debtor claims it intends to repay the allowed arrears.  There are two

problems with this.  First, the Plan appears to deny interest to WPR Funding on the arrears as

they are paid over five years time.  Under section 1325(a)(5)(B)(ii), as a oversecured creditor,

WPR Funding must receive "the value, *as of the effective date of the plan*, . . . not less than the

allowed amount of such claim[.]"  Without interest on the payments, the only way for the Debtor

to comply with this provision is for her to pay the WPR's claim in full on the effective date,

which she indisputably does not seek to do.  Accordingly, the Plan does not comply with this

provision.  WPR Funding has a fully secured claim and does not consent to payment of anything

less than what is required by the Bankruptcy Code.

6.    Next, and assuming the matter of interest is addressed, and the Debtor intends to

proceed with confirmation pending a determination by this Court of what those arrears are, the

Debtor must propound a plan that incorporates the maximum amount that WPR's claimed arrears

could be.  This protects all parties from proceeding with confirmation of a plan that turns out to

---

[1] WPR Funding submits that it is entitled to postpetition legal fees pursuant to the terms of the underlying note and mortgage and section 506(b) of the Bankruptcy Code.  WPR intends to calculate those charges and seek payment of those charges as part of its claim in this case.

lack feasibility.  If WPR prevails in a claim dispute, the parties will have gone through the confirmation litigation for no purpose.  Contrary to the Debtor's belief, unnecessary legal expense over a contested plan confirmation that ultimately does not lead to confirmation *does* prejudice WPR and other creditors.  The Plan must be proposed and confirmed on worse case scenario, not a best case scenario.

7.    Next, the Debtor wrongly claims WPR failed to allege that rents and proceeds are subject to section 552(b) of the Bankruptcy Code.  This is not true.  Exhibit C to Claim No. 7 attaches an assignment of rents and lease covering those aspects of cash collateral.  The Debtor executed that assignment herself and is fully aware of it.  Section 552 clearly extends the effect of that assignment to postpetition rent and lease income.  The Debtor now claims that she is paying "all rental income received from Property" to WPR.  (Debtor's Reply, ¶ 6.) This statement itself implicates confirmability of the Plan. First, WPR does not believe that to be true. Next, if it is the case that the Debtor has paid postpetition all income from the Property to WPR, that income has been very erratic and by definition the Property fails to generate sufficient income to both pay the mortgage, plus the real estate taxes and insurance.  In fact, it does not even appear to match the amounts in the Debtor's income disclosure.  A shortfall would render the Plan unfeasible unless additional funds were coming from elsewhere in the Debtor's estate. If they are coming from elsewhere, other creditors are being hurt while the Debtor props up a losing property.  In other words, in addition to keeping two late model luxury cars, a Mercedes-Benz and a Lexus,[2] a real property in Jamaica, plus her full equity interest in her two wholly owned businesses that use the Property, the Debtor intends to use funds that would otherwise be

---

[2] It is unclear why the Debtor needs two luxury cars when the schedules indicate that her family is comprised of the Debtor and her 20-year old son who does not live with the Debtor.  The Debtor's schedules are confusing.  They appear to include an unemployed spouse, who does not appear to be a dependant, and a son that is a dependent but does not live at home.  In any case, there does not appear to be any justification for any luxury car, let alone a two luxury cars, especially for family members who are not living at home or covering the cost of such luxuries.

available to other creditors to support a losing investment Property. Meanwhile, by all

appearances, if the Property and certain other non-essential assets were liquidated, there may

well be enough money to pay all creditors in full. Accordingly, the Plan likely does not meet the

best interests of creditors test under section 1325(a)(4) of the Bankruptcy Code. The foregoing

uses of income would also render the Plan not fair and equitable as they are not a reasonably

necessary use of disposable income. 11 U.S.C. § 1325(b).

       8.      As noted, the Debtor amended her Plan to fix a number of errors and omissions.

The Plan still contains a number of continuing objectionable features including:

- The Plan continues to have a placeholder for the amount to be paid to WPR Funding. Accordingly, it cannot and should not be confirmed in this form.

- The Plan assumes that the second mortgage will be avoided in its entirety. The burden of proving the lack of value falls on the Debtor. WPR does not believe the Property is worth just $380,000. To the contrary, the Debtor is an experienced real estate agent that appears to have influenced an appraisal aimed at indefensibly low, borderline fraudulent value. Either way, the Plan is not ripe for confirmation because if the Debtor fails in what appears to be an improper lien avoidance bid, the Plan will have to change materially.

- The Debtor must establish the value of the Property for confirmation. She has not.

- The Plan fails to address outstanding water charges in the amount of $2,773.29 and outstanding real estate taxes of $2,753.79 on the Property.

- The plan does not require any contributions from people benefiting from luxury property.

- The Debtor's residence is at 784 Chestnut Street in the Bronx. That building was apparently owned by the Debtor until May 2013. At that time, it was apparently sold or otherwise transferred to NSR Realty Holding Corp. for what appears to have been $200,000. There is no indication of what the Debtor's relationship is with NSR, which entity is not mentioned in her schedules. NSR sold the property less than four months later for $279,000. This suggests that a fraudulent transfer may have taken place between the Debtor and NSR.

- There are no leases listed in the Debtor's schedules so it is unclear under what terms the Debtor occupies the Chestnut Street property. The Debtor's expenses include a payment of $1,600 per month but it is not clear to whom that payment is going. Accordingly, it is unclear what role her home plays in this chapter 13 case and whether or not she is the

equitable owner of a valuable, three story, 1 or 2 family house with yard, driveway and large unattached garage in the Bronx.[3]

9.      For all of the reasons set forth herein and in the initial objection, WPR Funding requests that the Court deny confirmation of the Plan and/or adjourn this matter until a confirmable amended Plan is filed and reviewed by creditors with adequate time to do so.

## RESERVATION OF RIGHTS

10.      WPR Funding hereby reserves its right to further supplement this objection with respect to this Plan or any amended plan on the grounds stated herein, or on any other grounds, to respond to any revised chapter 13 plan proposed in this case.

## CONCLUSION

11.      For all of the reasons set forth herein, WPR Funding requests that the Court deny confirmation of the Plan as proposed and/or adjourn this matter until an amended Plan is file and reviewed by creditors.

RAVERT PLLC

Dated: April 29, 2014
       New York, New York

By: /s/ Gary O. Ravert
    Gary O. Ravert
    116 West 23 Street, Fifth Floor
    New York, New York 10011
    Tel: (646) 961-4770
    Fax: (917) 677-5419

*Attorneys for 3939 WPR Funding LLC*

---

[3] The building appears to have multiple entrances and therefore it is not possible to tell whether it is used as a one or two family building. It appears to be a legal one family but of course that does determine whether it is operated as a two family.