UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
_____
                                            :
In re:                                      :    Chapter 13
                                            :
MARCIA CAMPBELL                             :    Case No. 13-40003 (ALG)
                                            :
                    Debtor.                 :
_____:

DECISION

      Marcia Campbell (the "Debtor") has objected to the proofs of claim filed by WPR 3939 Funding LLC ("WPR") and Ninel Baker ("Baker"), both of whom assert they are secured creditors. There have been myriad filings by these parties, including objections to the Debtor's proposed chapter 13 plan, an objection to the Debtor's discharge, as well as a motion by the Debtor seeking to avoid the lien of the junior secured creditor. The Debtor and the creditors rely on wildly disparate appraisal reports as to the value of the collateral the creditors claim. A central issue in all of the motions and objections concerns the creditors' entitlement to default interest. While certain of the matters at issue require further evidentiary support for resolution, at a hearing on June 17, 2014, the Court determined that providing the parties with guidance on the question of default interest would aid in resolution of this matter. This Decision and Order will therefore deal with the issue of entitlement to default interest. Proceedings to determine all other issues will be deferred until after an adjourned chapter 13 hearing on August 7, 2014 at 2:00 p.m.

*Facts*

      On December 8, 2013, the Debtor filed a petition under chapter 13 of the Bankruptcy Code, and a plan (as subsequently amended, the "Plan"), pursuant to which she seeks to retain a commercial, mixed-use property that she owns located in the Bronx, New York (the "Property"). She does not reside in the Property but rents out part of the Property and has a business that

occupies rental space in the Property.

Opposition to the Plan was filed by WPR and Baker. WPR claims to be the holder of a first priority lien on the Property as assignee of a mortgage and note executed by the Debtor on April 13, 2005 to secure a $400,000 loan.[1] On February 5, 2014, WPR filed a proof of claim, as amended (Claim #7),[2] in the Debtor's bankruptcy case in the amount of $479,428.08, representing $351,888.42 for principal due on the note "plus non-default and default interest, escrow advances, legal fees and other charges allowable under the Note and Mortgage." WPR's predecessor in interest had filed a foreclosure action on the note and mortgage in the Supreme Court, Bronx County (the "NY Court") on February 6, 2013, alleging that on October 1, 2012, the Debtor ceased making monthly payments required under the terms of her note and mortgage; the foreclosure action was stayed by the Debtor's bankruptcy filing in December 2013.

Baker purports to hold a secured lien on the Property, junior to the WPR lien, based upon a mortgage and note executed by the Debtor on August 15, 2009 as security for a $45,000 loan to the Debtor.[3] On January 11, 2013, Baker commenced a mortgage foreclosure action in the NY Court, alleging that the Debtor had failed to make a single monthly mortgage payment under the terms of the agreement. On February 7, 2014, Baker filed a proof of claim, which she amended on April 28, 2014 (as amended, Claim #8), in the amount of $88,314.53.[4]

---

[1] According to WPR's filings, the original holder of the note and mortgage assigned the documents on April 19, 2013 to another entity which, in turn, assigned these documents on October 9, 2013 to WPR.

[2] The amendment to the proof of claim was filed on April 22, 2014 to reflect a correction to the amount of arrearage allegedly owed.

[3] The interest rate on the loan was 8% per year and required monthly payments of $376.65 for twenty years. The note provided that the default interest rate would be "18% or the highest legal rate, whichever is lower."

[4] The April 28, 2014 filing was originally labeled as claim #12 but later corrected to reflect it as an amendment to claim #8. Baker maintains that the amendment increased the claim amount from $79,619.18 to $88,314.53 to reflect

2

The Debtor objected to certain parts of both secured claims, including the imposition of pre- and post-petition default interest. Originally, the Debtor also opposed WPR's request for a pre-payment premium and late payment charges, but WPR has since waived any pre-payment charges and concedes that any late charges would be duplicative if default interest is granted. *See In re 785 Partners LLC*, 470 B.R. 126, 137 (Bankr. S.D.N.Y. 2012). Relying on an appraisal that attributes a market value of $380,000 to the Property, the Debtor also argues that WPR's secured claim should be capped at the appraised value of the Property and that Baker's junior lien should be avoided entirely. Baker commissioned a separate appraisal that valued the Property at $700,000, which she argues is sufficient to secure her claim even if both the first and second lien claims are awarded default interest; WPR also relies on this higher value. The value of the Property is an issue for later determination.

*Cure Defaults and Reinstate Mortgage*

In the Plan, it appears that the Debtor proposes to reinstate the WPR mortgage and cure defaults.[5] Section 1322(b) of the Bankruptcy Code provides that a chapter 13 plan may –

. . .
(2) modify the rights of holders of secured claims other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims;

(3) provide for the curing or waiving of any default;
. . .
(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due. . . .

---

$8,695.35 in pre-petition attorney fees, for which she maintains she has a secured claim pursuant to the terms of the loan documents.

[5] As noted, the Debtor seeks to avoid Baker's junior lien based on the lower appraisal, while Baker contends that the higher appraisal is sufficient to warrant payment of her claim in full.

Section 1322(b) allows "the curing . . . of any default" under a chapter 13 plan.  Even if there is a contractual acceleration clause,[6] the power to cure a default allows chapter 13 debtors to "first cure their default under (b)(3) and then maintain payments under (b)(5)."  *In re Taddeo*, 685 F.2d 24, 28 (2d Cir. 1982).  *See also* 11 U.S.C. § 1325(a)(5) (setting forth the confirmation requirements with respect to each "allowed secured claim provided for by the plan").

*Interest Rate*

*Pre-petition*

While the Second Circuit in *Taddeo* recognized a debtor's right to cure a default, it did not indicate how to determine the proper amount required for cure.   The issue has been settled by the addition of § 1322(e) to the Bankruptcy Code, adopted to overrule the Supreme Court's decision in *Rake v. Wade*, 508 U. S. 464 (1993).  *In re Adejobi*, 404 B.R. 78, 80 (Bankr. E.D.N.Y. 2009).  Section 1322(e) of the Bankruptcy Code provides as follows:

> Notwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law.[7]

Thus, "the amount necessary to cure a default is the same as would be required to cure if the debtor were not in bankruptcy."  *Adejobi*, 404 B. R. at 81, *quoting* 8 COLLIER ON BANKRUPTCY, § 1322.18 at 1322.67 (15th ed. rev. 2006).   To qualify as a cure amount, the interest and charges proposed must be both (1) required under the original agreement, and (2) not prohibited by state law.  *Id*.  As stated by the *Adejobi* court,

---

[6] "[O]nce a mortgage is accelerated, the entire amount is due."  *Wells Fargo Bank, N.A. v. Burke*, 94 A.D.3d 980, 982, 943 N.Y.S.2d 540, 542 (2d Dept. 2012).

[7] Section 1322(e), which applies in a chapter 13 case is almost identical to §§ 1123(d) and 1222(d), which apply in the chapter 11 and chapter 12 context, respectively.

> The general rule in bankruptcy is that contractual interest on a debtor's obligation accrues up to the date of the bankruptcy filing. If unpaid, all contractually accrued interest, including default interest, becomes an integral component of a creditors' claim in bankruptcy. 404 B.R. at 83.

Thus, if the parties' agreement provides for a default rate of interest, if such rate has become due and payable and if such rate is permitted by state law, the amount necessary to cure the Debtor's *pre-petition* arrears is the default rate. 404 B.R. at 79, 83.

There is no reason to believe the default interest rate provided in either the WPR or Baker instruments would be void under New York Law. Although the 24% default rate in the WPR mortgage is exceedingly high, and 18.625% higher than the non-default rate of 5.37%, similar rates have been enforced by New York courts. *See Emigrant Funding Corp. v. 7021 LLC*, 25 Misc.3d 1220(A), 901 N.Y.S.2d 906, (Sup.Ct. Queens Co. Oct. 26, 2009) (enforcing 24% default interest rate where original rate was 7.25%). See also several chapter 11 cases in which this Court has held that where the parties to the agreement are sophisticated and there are no issues of overreaching, such higher rate is not considered a "penalty." *See 785 Partners*, 470 B.R. at 131-32; *In re 243d Street Bronx R& R LLC*, 2013 WL 1187859 (Bankr. S.D.N.Y. 2013). In the case at bar, there is no assertion that the Debtor, who runs a business from the Property, is the victim of overreaching. In *785 Partners*, the bankruptcy court noted that "[e]ven where the default rate strikes the judge as high, a court cannot rewrite the parties' bargain based on its own notions of fairness and equity." *Id*. Thus, the secured creditors in this case appear entitled to prepetition default interest if it was due and payable prepetition, and the underlying agreements provided therefor.

There is no dispute that the WPR and Baker notes and mortgages provided for default

5

interest, and no dispute that the Baker debt was accelerated.[8]   There is, however, no notice of acceleration of the WPR debt in the record, and the parties dispute whether default interest became payable prepetition.   We turn to that issue next.

*The WPR Note and Mortgage*

The WPR Note provides that "after any stated or accelerated maturity hereof, the Loan shall bear interest, payable on demand, at the default rate . . . set forth in the [M]ortgage. . . ."   The Note is therefore very clear that default interest is only payable on demand.   There is nothing in the record to reflect that WPR conveyed to the Debtor, after the alleged October 2012 default, and prior to filing its foreclosure action in the NY Court, its election to treat the default in the payment of a mortgage installment as a default under the Mortgage.   Nor is there any indication in the record that WPR's predecessors started charging the Debtor default interest in 2012.   WPR in fact has never placed in the record a notice of default or notice of acceleration.

Instead, WPR argues that the debt automatically accelerated, relying on ¶ 32(a) of the Mortgage under the heading "Defaults, " which provides that "after default in the payment of any installment of principal or interest as provided in the Note," the debt shall become due.   WPR argues that the failure to pay the October 1, 2012 installment was a default and that the default rate applied from that date.   However, WPR ignores the lead-in clause to all of the defaults in ¶ 32, including failure to make payment, material misrepresentations and the like.   The introductory sentence for ¶ 32, which contains the referenced provision, starts as follows:

> The Debt shall become due, *at the option of the Mortgagee*, upon the occurrence of any of the following events. (emphasis added).

It then lists nine events that the Mortgagee could opt to treat as a default.   Clearly action by the

---

[8] The record contains a notice of acceleration of the Baker debt, dated June 18, 2012.

Mortgagee was required in order to accelerate the debt, and there was no automatic acceleration as a consequence of a payment default.

This construction is compelled by the fact that a contract must be read as a whole, *Postlewaite v. McGraw-Hill, Inc.*, 411 F.3d 63, 67 (2d Cir. 2005), and a reading of the entire "Default" section leads to the conclusion that acceleration is required for a payment default.  The section relating to "Defaults" is comprised of three paragraphs (¶¶ 32-34).  Although each paragraph lists a number of events that would constitute a default, the introductory sentences for the paragraphs are not identical.  Paragraph 33 has a similar introductory sentence to ¶ 32 and lists three potential events that cause the debt to become due "at the option" of the mortgagee. Paragraph 34, however, contains a different introductory sentence, as follows:

> The Debt shall, *forthwith*, become due upon the occurrence of any of the following events; the Mortgagor or any guarantor of the payment of the Note and/or of this Mortgage shall: (emphasis added).

The paragraph then lists 12 events, including the filing of a bankruptcy petition, that result in automatic acceleration of the debt.  The fact that, under ¶¶ 32-33, the mortgagee had the option to accelerate, or not, means that there had to be some mechanism for the mortgagee to convey its election to the mortgagor.  *See Wells Fargo Bank, N.A. v. Burke*, 94 A.D.3d at 982-83, 943 N.Y.S.2d at 5420) (noting that if acceleration of a debt is "optional," affirmative action is required to evidence the election to accelerate).

WPR has totally failed to establish the fact or date of acceleration, and it appears that WPR and its predecessors have not been forthright concerning the issue.  When WPR's predecessor brought the foreclosure action, it stated in ¶ 10 of the complaint that once the appropriate length of time elapsed after the default it "has elected by letter dated to

7

declare immediately due and payable the entire unpaid principal balance." However, although the complaint references a "letter dated," it left out the date of any such letter and indeed did not even have a space for such date, making it easy for a reader to overlook the omission. As noted above, WPR has not submitted any such acceleration letter in the record in this case. Further, although ¶ 10 of the foreclosure complaint goes on to state:

> Pursuant to the terms of the Mortgage, the plaintiff has elected and does hereby reiterate by the filing of this complaint its intention to declare the entire principal balance to be due and owing,

WPR has never relied on this assertion. Instead, WPR argues that the date of acceleration has no bearing on the calculation of default interest because the obligation to pay the entire Debt became due and payable automatically upon the failure to pay the October 1, 2012 installment.[9]

It is recognized that ¶ 35 of the Mortgage also provided that "[u]pon the occurrence of any default hereunder, the Note and all other sums secured hereby shall bear interest at the Default Rate." As the Second Circuit recently stated, however, this type of a general paragraph has been interpreted by the New York cases as "'not self-operative,' intended to simply give the creditor 'the right to treat the entire debt as matured.'" *U.S. Bank Trust Nat'l Corp. v. AMR Corp. (In re AMR Corp.)*, 730 F.3d 88, 100 (2d Cir. 2013), *citing*, *Wurzler v. Clifford*, 36 N.Y.S.2d 516, 517 (N.Y. Sup. Ct. 1942); *see also Tymon v. Wolitzer*, 39 Misc.2d 504, 240 N.Y.S.2d 888 (N.Y. Sup.

---

[9] The filing of a foreclosure action is generally viewed by New York courts as an appropriate way in which to elect to accelerate a loan. *Albertina Realty Co. v. Rosbro Realty Co.*, 258 N.Y. 472, 476, 180 N.E. 176, 177 (1932); *Logue v. Young*, 94 A.D.2d 827, 463 N.Y.S.2d 120, 121 (3d Dept. 1983). Nevertheless, notice of an election to accelerate must be clear and unequivocal. *Wells Fargo Bank, N.A. v. Burke*, 94 A.D.3d at 983, 943 N.Y.S.2d at 542. The language employed in the foreclosure complaint in this case is equivocal as it reiterates whatever "intention" had been expressed in an acceleration letter that had purportedly been sent. The content of any such letter, however, is not in the record. Thus, there is no any way to determine whether the Debtor was afforded an opportunity to cure the default, or what the mortgagee's precise plan or "intention" was with respect to declaring the acceleration. Therefore, on this roiled record, the Court cannot make a finding that the loan was accelerated.

8

Ct. 1963).[10]  This construction of the Mortgage is particularly appropriate here where the paragraphs on default distinguish clearly between defaults that automatically accelerate the debt and defaults where the debt can be accelerated at the option of the Mortgagee. Since the record is insufficient to establish that WPR or any of its predecessors accelerated the Mortgage, it does not appear that WPR is entitled to prepetition default interest.[11]

*Post-petition / Pre-confirmation*

A separate issue is the interest rate applicable in the period after the chapter 13 petition filing but prior to confirmation of a plan (often referred to as pendency interest).  As noted earlier, ¶ 34 of the Mortgage provided that the default rate of interest would apply immediately upon the filing of a bankruptcy petition, so there was acceleration of the debt.[12]  Nevertheless, a claim for pendency interest is not governed by § 1322(e) of the Bankruptcy Code or the parties' agreement, and, in fact, is entirely disallowed by § 502(b)(2) of the Bankruptcy Code.  It is available only if the debt is oversecured because, "pursuant to § 506(b), an oversecured creditor is entitled to post-petition interest on its claim up to the value of its collateral."  *243rd Street Bronx R&R LLC*, 2013 WL 1187859 at * 2 (Bankr. S.D.N.Y. 2013), *citing 785 Partners*, 470 B.R. at 133-34 (determing post-petition interest in the context of a chapter 11 case); *see also In re Stringer*, 508 B.R. 668, 671 (Bankr. N.D. Miss. 2014).

In *Keybank Nat'l Ass'n v. Milham (In re Milham)*, 141 F.3d 420, 423 (2d Cir. 1998), the

---

[10] Moreover, although the *Wurzler* and *Tymon* courts deemed that the acceleration clauses at issue required an election by the creditor, notwithstanding seemingly automatic language, *Wurzler*, 36 N.Y.S.2d at 517 ("due and payable forthwith"); *Tymon*, 240 N.Y.S.2d 893-894, ("immediately become due and payable"), in the instant case, the language of ¶ 32 of the Mortgage specifically provided that the debt would become due at the option of the mortgagee.

[11] There is an outstanding dispute as to the value of the Property and whether Baker's claim is secured; however, there does not appear to be any question that she accelerated the debt by letter, dated June 18, 2012.

[12] The automatic acceleration of a debt on a bankruptcy filing is not a void *ipso facto* clause. *U.S. Bank Trust Nat'l Corp. v. AMR Corp. (In re AMR Corp.)*, 730 F.3d 88, 106-107 (2d Cir. 2013).

Second Circuit considered the issue of pendency interest in a chapter 13 case. It determined that an oversecured creditor is "entitled to receive § 506(b) interest only until the confirmation date of the chapter 13 reorganization plan. At that time, the accumulated pendency interest becomes a part of the allowed secured claim, and the plan must provide for payment of the present value of such allowed claim as of the effective date of the plan." *Milham*, 141 F.3d at 425. The *Milham* court, however, did not decide the issue of the interest rate that applied, noting that it is "often, although not necessarily, at the contract rate." *Id.* In the context of a chapter 11 case, in *In re General Growth Properties, Inc.*, 451 B.R. 323, 326 (Bankr. S.D.N.Y. 2011), this Court found that there is a presumption that the contract rate applies in the absence of a specified rate of interest under § 506(b) but added that this presumption is subject to equitable considerations.

> Equitable factors considered in determining post-petition interest include whether (i) the debtor is solvent; (ii) the increased interest rate can be categorized as a penalty; (iii) the creditor engaged in misconduct; (iv) payment of such rate would cause harm to other unsecured creditors; or (v) payment of such rate would materially impair the debtor's fresh start. *Id.* When these factors are absent, courts are reluctant to modify private contractual agreements concerning post-petition default interest rates. *Id.* at 328.

In this case, chapter 11 analysis appears useful in the context of a chapter 13 reorganization case, and several of the factors identified in *General Growth Properties* are present. Payment of default interest would cause harm to unsecured creditors and materially impair the Debtor's fresh start. Indeed, the Debtor might be unable to confirm a plan at all. Section 506 affords the Bankruptcy Court "limited discretion to modify the amount of *post-petition* interest that an oversecured creditor may collect as part of its claim," *785 Partners*, 470 B.R. at 133 (emphasis in original), and as the Court said there "the focus should be on the spread between the pre-default and post-default rates." *785 Partners*, 470 B.R. at 136 n.7. The *785 Partners* Court found the 5%

spread at issue there to be reasonable under New York law.  *Id.*   See also *In re Vest Associates*, 217 B.R. 696, 702 (Bankr. S.D.N.Y. 1998) (noting in a chapter 11 case that the presumption in favor of the contract rate "may be rebutted if the rate is significantly higher without any justification offered for the spread or where the default rate appears inordinately high in relation to the non-default rate").   In this case, the default rate of interest for the WPR mortgage is 24%, 18.635% in excess of the 5.375% WPR mortgage interest rate.   Therefore, assuming that WPR is oversecured, a fact that the parties currently dispute, WPR's request for a post-petition default rate of interest at the contract rate cannot be accepted on the present record.   A further hearing is required to set an appropriate, equitable post-petition, pre-confirmation rate.[13]

*Post-Effective Date Interest*

In a chapter 13 plan § 1325(a)(5) requires that with respect to each "allowed secured claim provided for by the plan" that is not secured by the debtor's principal residence, either (i) the holder of such claim must accept the plan (§ 1325(a)(5)(A)); (ii) the debtor must surrender the property securing such claim to the holder (§ 1325(a)(5)(C)); or (iii) the holder of the claim must retain its lien and receive distribution in equal monthly amounts of property with a value, as of the effective date of the plan, not less than the allowed amount of such claim. (§ 1325(a)(5)(B)).[14]   In

---

[13] The issues relating to the default rate of interest on the Baker loan for the "post-petition / pre-confirmation" period are different, as the Baker default rate is 18%, or 10% higher than the 8% Baker mortgage interest rate.   A hearing may nevertheless be required to consider the pendency default rate on this obligation, depending on the value of the collateral.

[14] Section 1325(a)(5) of the Bankruptcy Code provides that with respect to each allowed secured claim provided for by the plan—

    (A)  the holder of such claim has accepted the plan;

    (B) (i) the plan provides that—
        (I) the holder of such claim retain the lien securing such claim until the earlier of—
            (aa) the payment of the underlying debt determined under nonbankruptcy law; or

11

the instant case, the Debtor is seeking to retain the Property, and WPR, which holds the secured arrearage claim provided for in the Plan, has not accepted the Plan. Therefore, the Plan must provide that WPR retain its lien and that the value, as of the plan's effective date, of the property to be distributed under the Plan on account of the pre-petition claim cannot be less than the amount of that claim.

In calculating the amount of interest to be paid under a plan for the foregoing purposes, where the property, as here, is not the Debtor's principal residence, the Supreme Court has ruled that a "formula approach" should apply. *Till v. SCS Credit Corp.*, 541 U.S. 465, 478-79 (2004); *see also In re Wimmer*, 2014 WL 2925101, at *7-8 (Bankr. S.D.N.Y. June 30, 2014) (applying the *Till* formula to real property collateral that was not the debtor's principal residence). The *Till* formula starts with the prime rate, "which reflects the financial market's estimate of the amount a commercial bank should charge a creditworthy commercial borrower," and then adjusts that amount for the risk of nonpayment posed by a bankrupt debtor. 541 U.S. at 479. This adjustment for risk may require an evidentiary hearing on factors that impact it, including "the circumstances of the estate, the nature of the security, and the duration and feasibility of the

---

        (bb) discharge under section 1328; and
    (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;

  (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and

  (iii) if—
    (I)  property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
    (II)  the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or

(B) the debtor surrenders the property securing such claim to such holder.

12

reorganization plan." *Id*. The *Till* court noted that by starting with the *low* prime rate and adjusting *upward*, the evidentiary burden is placed "squarely on the creditors" who would have easier access "to any information absent from the debtor's filing (such as evidence about the 'liquidity of the collateral market.')" *Id*. The *Till* Court further stated that an evidentiary hearing likely would not be protracted or costly because

> the resulting "prime-plus" rate of interest depends only on the state of financial markets, the circumstances of the bankruptcy estate, and the characteristics of the loan, not on the creditor's circumstances or its prior interactions with the debtor. *Id*.

The interest rate provided by the formula approach applies to the pre-petition arrearage cure claim as of the effective date of the plan to ensure that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim."[15]

Thus, as of the effective date, presumably the confirmation date, the appropriate interest rate is a rate that will afford the creditor the present value of its secured claim as of that date.[16] A hearing must be scheduled to determine that rate if the parties cannot agree.

---

[15] Depending on the value of the collateral, and the content of the Debtor's Plan, a similar analysis will be required to set an interest rate for the Baker loan.

[16] To the extent that the Debtor proposes to bifurcate the claim into a secured and unsecured portion based upon an appraisal valuing the Property at less than the total amount of the claim, such treatment is a modification of the rights of the holder of the claim under § 1322(b)(2), which § 1322(d) requires be paid within five years. *See In re Koper*, 284 B.R. 747, 752-53 (D. Conn. 2002). As the Property is not the Debtor's primary residence, she has two available options: (1) to continue to pay the mortgage under its terms, including the non-default rate of interest for the remaining term of the mortgage, while paying the arrearage under the plan at the *Till* rate of interest; or (2) to modify the mortgage by bifurcating the mortgage into a secured and unsecured claim portion subject to completing full payment in five years. A hybrid plan, combining the attributes of curing and maintaining the mortgage under §§ 1322(b)(3) and (b)(5) with a modification of the mortgage terms under § 1322(b)(2) is not permissible. *Koper*, 284 B.R. at 753-54; *see also Wimmer*, 2014 WL 292510, at *5-7; *In re Bullard*, 475 B.R. 304, 314 (Bankr. D. Mass. 2012). At present, the Debtor continues to pay the WPR mortgage under its terms at the non-default rate, and the only WPR secured claim provided for in the Plan is the pre-petition arrearage claim.

Conclusion

Based on the record, WPR's claim for prepetition default interest is denied. Baker's claim to prepetition interest, default or otherwise, depends on the value of the collateral, an issue that must still be determined. If there is sufficient collateral value, a hearing on the issue of post-petition interest is required, as is a hearing on the *Till* rate for the post-effective date period.

This case shall be placed on the chapter 13 calendar of August 7, 2014 at 2:00 p.m., to discuss further proceedings.

Dated: New York, New York
      July 29, 2014

                                        **s/Allan L. Gropper**
                                        UNITED STATES BANKRUPTCY JUDGE

14